David ROMO, Appellant,

v.

**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellee.

No. 04–99–00820–CV.

Court of Appeals of Texas,
San Antonio.

March 21, 2001.

Edward L. Pina, Teresa Kathleen Valentic, Edward L. Pina & Associates, San Antonio, for Appellant.

Henry De La Garza, Asst. Atty. Gen., Katherine Kasten, Asst. Atty. Gen., Austin, for Appellee.

Sitting PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

PAUL W. GREEN, Justice.

In this employment discrimination case, David Romo appeals from the trial court's grant of summary judgment in favor of Romo's former employer, the Texas Department of Transportation (TxDot). Romo, a Hispanic man, was fired after a TxDot investigation concluded Romo sexually harassed his female supervisor. Romo claims the sexual harassment charge is a pretext for discrimination because he is Hispanic.

### Background

Romo was employed by TxDot in 1993. Romo says he learned in April 1996 that he was the lowest paid college-degreed employee in the Environmental Affairs Division (EAD). He says he then requested TxDot's equal opportunity statistics and found although most EAD employees were minorities, more non-minority employees held professional level positions. On September 24, 1996, Romo e-mailed the Director of EAD, Dianna Noble, that he was going to be applying for an upcoming historian position and he thought EAD was "dangerously close" to not meeting guidelines for hiring, firing and promotion of women and minorities.

In June 1996, Romo's former coworker, Barbara Stocklin, was promoted to Environmental Supervisor, making her Romo's immediate superior. In September 1996, Stocklin and Romo discussed his "concerns about his lack of promotion." She told him one of the primary obstacles was his failure to meet the Secretary of Interior's Professional Qualification Standards for Architectural History. At about the same time, Stocklin says she began to notice Romo was having work performance and work procedure problems. The quality of Romo's work continued to decline through the winter and spring of 1997, in spite of intensive evaluation and training sessions set up by Stocklin and her supervisors, Ann Irwin and Lana Meredith. After Stocklin reported in January 1997 that Romo made romantic advances to her, Romo was required to take a class on sexual harassment. Romo was reprimanded in February 1997 for his poor work performance.

In January 1997, Romo applied for a position as an Environmental Specialist II/III. Romo felt he was more qualified than Richard Mitchell, the white male who was hired for the position. In the spring of 1997, Romo began working on an audit of the Freedman Cemetery Project, in which TxDot relocated a number of graves of former slaves. Romo believed irregularities in the handling of the project showed discrimination by TxDot. In June 1997, he wrote a letter to a state Senator's office, with copies to the Dallas Mayor's office and a black community group.

By early May 1997, Stocklin felt Romo's work was getting worse rather than better. Romo was placed on probation on May 15, 1997. On May 26, 1997, Stocklin found an unsigned letter in her chair that she felt showed a strange obsession with her. Romo admits he wrote the letter. Stocklin was disturbed enough to take it to her supervisor, who then took it to Dianna Noble, the Director of EAD, on May 27, 1997. Noble initiated an independent Management Directed Investigation (MDI) through TxDot's Civil Rights Division. Romo was placed on administrative leave

on May 27, 1997, pending the outcome of Stocklin's sexual harassment claim.

On the same day he was placed on administrative leave, Romo spoke with Jessie Ball, the Deputy Director of the Civil Rights Division (CRD), making a sexual harassment complaint against Stocklin. When Noble was contacted by the CRD about Romo's complaints against Stocklin, she ordered the investigation broadened to include both conflicting sexual harassment charges. Romo filed a Texas Commission on Human Rights claim on June 17, 1997. The MDI concluded Stocklin's sexual harassment complaint was valid and Romo's was not. Following the investigation, Romo was fired on August 7, 1997.

### Standard and Scope of Review

■ We review a summary judgment de novo. To prevail on summary judgment, the movant must show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Prop. Mgmt., Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Weiss v. Mech. Assoc. Servs., Inc.,* 989 S.W.2d 120, 124 (Tex. App.—San Antonio 1999, pet. denied). When a defendant moves for summary judgment, it must negate at least one element of the plaintiff's cause of action or conclusively establish an affirmative defense. *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975).

■ In a traditional summary judgment under TEX.R.CIV.P. 166a, once the movant has established a right to summary judgment, the burden shifts to the non-movant to present issues which preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Garcia v. Ko-*

*John Hancock Variable Life Ins. Co.,* 859 S.W.2d 427, 430 (Tex.App.—San Antonio 1993, writ denied). When a party moves for a no-evidence summary judgment, the nonmovant must produce some evidence raising a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Weiss,* 989 S.W.2d at 123. The nonmovant need not "marshal its proof;" rather it "need only point out evidence that raises a fact issue on the challenged elements." TEX.R. CIV. P. 166a(i) cmt.; *Weiss,* 989 S.W.2d at 123. A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

■ In this case, the trial judge not only listed his reasons for the summary judgment in the judgment, he also made separate findings of fact and conclusions of law. However, upon review, we may consider all potential grounds for summary judgment presented to the trial court, so long as they are asserted on appeal. *Baker Hughes, Inc. v. Keco R. & D., Inc.,* 12 S.W.3d 1, 5–6 (Tex.1999) (citing *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625–26 (Tex.1996)).

### Discussion

■ Romo brings his claims under the Texas Commission on Human Rights Act (TCHR), TEX. LAB.CODE ANN. §§ 21.051, 21.055 (Vernon 1996). "Because our state statute tracks its federal counterpart in title VII of chapter 42 of the United States Code, we may consider analogous federal case law in the interpretation and application of our Texas statute." *Graves v. Ko-*

*met,* 982 S.W.2d 551, 554 (Tex.App.—San Antonio 1998, no pet.).

In an employment discrimination case, we employ the burden-shifting analysis recently affirmed by the United States Supreme Court in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). *See Graves,* 982 S.W.2d at 554 (citing *Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995)). The plaintiff has the initial burden to come forward with a *prima facie* case of discrimination. If a *prima facie* case is established, the plaintiff is entitled to a presumption of discrimination. The burden then shifts to the defendant/employer to present evidence of a legitimate, nondiscriminatory reason for its action. *Reeves,* 120 S.Ct. at 2106; *Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d 60, 64 (Tex.App.—Houston [14th Dist.] 1998, no pet.). "[S]ubjective beliefs of discrimination *alone* are insufficient to establish a *prima facie* case." *Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Once the employer has articulated legitimate, nondiscriminatory reasons for its actions, any presumption of discrimination disappears and the burden shifts back to the plaintiff to prove the employer's articulated reasons are merely a pretext for discrimination. *Reeves,* 120 S.Ct. at 2106. "Even though the burden of production shifts, the burden of persuasion remains continuously with the plaintiff." *Farrington,* 865 S.W.2d at 251. It is not sufficient merely to show the employer's proffered reasons are false or not credible; the plaintiff must also show the unfair treatment was motivated by intent to discriminate on the basis of ethnic origin. *See Walton v. Bisco Indus., Inc.,* 119 F.3d 368, 370 (5th Cir.1997). In some cases, "a

plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 120 S.Ct. at 2109. However, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

In his first three issues, Romo alleges the trial court impermissibly shifted the burden of proof in the *prima facie* phase of the case by considering evidence of (1) TxDot's articulated reasons for denying Romo a position, (2) TxDot's articulated reasons for adverse employment actions, and (3) TxDot's articulated reasons for retaliation. Romo's fourth and fifth issues challenge the trial court's finding of no pretext by TxDot as a matter of law.

### (1) Discriminatory denial of employment position

Romo contends he was denied the opportunity to interview for the Environmental Quality Specialist II/III position because he is Hispanic. To establish a *prima facie* case of discrimination in the denial of an employment position, Romo must show:

(1) he is a member of a protected class;

(2) he applied for and was qualified for the position;

(3) despite his qualifications, he was rejected;

(4) after he was rejected, the position remained open and the employer continued to seek applicants of Romo's qualifications.

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Perry v. Woodward,* 199 F.3d 1126, 1139–40 (10th Cir.1999), *cert. denied,* 529 U.S. 1110, 120 S.Ct. 1964, 146 L.Ed.2d 796 (2000).

It is undisputed that Romo is a member of a protected class. He applied for the position and was rejected. Mitchell, a white male, was hired for the position. Romo says TxDot allowed substitutions for certain qualifications in Mitchell's application and did not allow similar substitutions for Romo's application.

For the position of Environmental Specialist II/III, TxDot requires the following minimum qualifications:

(1) Bachelor's Degree in architectural history, historic preservation, history, architectural studies, art, art history, preservation architecture

(2) Course work in American architectural history (with college transcript to verify)

(3) Two years progressively responsible experience performing a combination of research, writing, publication and Section 106 coordination work or restoration architecture work OR Master's Degree with a concentration in one of the fields listed above

(4) Meets Secretary of the Interior's Professional Qualification Standards in Architectural History

\* \* Candidate must have either a Master's Degree in one of above fields with at least one course in American Architectural History OR a Bachelor's Degree in one of these fields plus evidence of acquiring substantial knowledge in American architectural history through completion of two or more courses and/or in-depth reports on American architectural history topics.

The requirements sheet then lists the types of courses and reports qualifying for supplementation to a bachelor's degree. These include college classes and training courses, various scholarly writings, and certain specific research and documentation reports.

Romo meets the first qualification because he has a bachelor's degree in history, however, he fails to meet the second qualification because he has no course work in American architectural history. Further, Romo's on-the-job training at TxDot fails to meet the requirement for academic courses. He does not have the alternate research and writing requirements. Romo admits he did not meet the Secretary of the Interior's Professional Qualification Standards in Architectural History, but he believes he should have been given credit because he was already doing most of the required work of the position. Although this might be a good business approach, we do not use the discrimination laws to second-guess business decisions. *See Walton,* 119 F.3d at 372.

■ Romo clearly did not meet the qualifications for the position. Accordingly, we consider whether Mitchell was similarly unqualified but allowed to substitute for some of the elements. Mitchell met the Secretary of the Interior's Professional Qualification Standards in Architectural History. He has a Master's Degree in community and regional planning for which he wrote a thesis focusing on historic commercial buildings in small Texas towns. In addition, Mitchell holds a Historic Preservation Certificate, which requires substantial post-graduate course work in historic preservation, including American architectural history. He worked at the Texas Historical Commission and on historical preservation projects for the City of Round Rock. He clearly met the requirements of the position and

was more qualified than Romo. Romo did not meet his burden to show a *prima facie* case of discriminatory denial of an employment position.[1]

## (2) Adverse employment action

■ To establish a *prima facie* case of employment discrimination, Romo must show: (1) he was a member of a protected group, (2) he suffered an adverse employment action, and (3) similarly situated nonprotected class employees were treated more favorably. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The summary judgment evidence shows Romo was a member of a protected class and he suffered adverse employment actions. He was reprimanded, placed on probation, and ultimately fired.

Romo complains the trial court improperly considered work performance and conduct in reviewing the *prima facie* case. Although the findings of fact address work performance, the judgment simply states Romo failed to establish a *prima facie* case of discrimination. Further, we may consider whether Romo failed to show similarly situated non-Hispanic employees were treated more favorably, an issue raised in the summary judgment motion and again in this appeal. *Baker Hughes, Inc.,* 12 S.W.3d at 5–6.

Romo's evidence of disparate treatment is so scant as to be merely a scintilla. He claims Irwin, a non-minority supervisor, is consistently late and absent yet her conduct is ignored, while his every minute is scrutinized. The mere fact that Irwin is a supervisor is a substantial difference between her situation and that of Romo. There is no evidence a supervisor is re-

quired to maintain the same hours as a lower level employee. Romo also claims he was paid less than any other employee with a college degree. Stocklin testified Romo is the only Section 106 researcher who does not have a degree or background with architectural experience. Romo did not dispute this testimony and did not name one employee with education and experience similar to his. Romo did not meet his burden to show a *prima facie* case of discriminatory adverse employment action

## (3) *Retaliation*

■ Finally, Romo says he was subjected to discrimination in retaliation for his complaints of disparate treatment and filing a TCHR discrimination claim. To prove his case, Romo must show: (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there is a causal link between the protected activity and the adverse action. Tex. Lab.Code Ann. § 21.055 (Vernon 1996); *Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P .A.,* 139 F.3d 532, 540 (5th Cir.1998); *Graves,* 982 S.W.2d at 554.

■ The trial court assumed, for purposes of the summary judgment, that Romo engaged in protected activity. We agree Romo's complaint to Noble about unequal hiring of minorities and the TCHR discrimination complaint are protected activities. Tex. Lab.Code Ann. § 21.055 (Vernon 1996); *Marsaglia v. Univ. of Tex., El Paso,* 22 S.W.3d 1, 4–5 (Tex.App.—El Paso 1999, pet. denied). Consequently, we must determine if there is evidence of a causal link between the protected activity and the adverse employment action.

---

**1.** The statistics cited by Romo have little or no value in establishing his *prima facie* case. Even if we accept that the statistics show a pattern of discrimination, Romo must show the loss of a particular position for which he was qualified. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1131–32 (11th Cir.1984).

Romo's reprimand and probation occurred after he made complaints about TxDot's treatment of minorities, including himself, with respect to hiring, promotion and pay. His termination came shortly after he filed his TCHR claim in June 1997 and after he says he complained of discrimination to the Civil Rights Division of TxDot. Because of the proximity in time, some evidence of a causal link exists. *Fields v. Teamsters Local Union 988*, 23 S.W.3d 517, 529 (Tex.App.—Houston [1st Dist.] 2000, pet. denied) (proximity of time may be considered if not too distant); *Webb*, 139 F.3d at 540 (court should consider whether disparate treatment began shortly after protected activity occurred). Thus, Romo established a *prima facie* case of retaliation.

■ Next we consider whether TXDot proved it would have terminated Romo in the absence of his protected conduct. *Jones v. Jefferson County*, 15 S.W.3d 206, 211–12 (Tex.App.—Texarkana 2000, pet. denied). Here the evidence is conflicting. Romo denies making any romantic overtures to Stocklin. He admits to writing the letter but insists Stocklin misinterpreted his intent. One of Romo's co-workers testified Romo's superiors began to closely scrutinize and criticize his work only after he complained about discriminatory practices. We may not judge the credibility of the witnesses. Because of this conflict, we cannot say as a matter of law the sexual harassment accusations and investigation were not a pretext for retaliation.[2] Therefore, we reverse the summary judgment as to Romo's retaliation claim and remand to the trial court for further proceedings.

### Conclusion

Because Romo failed to establish a *prima facie* case of discrimination, we affirm

the trial court's judgment on the denial of position and adverse employment action claims. We reverse the trial court's summary judgment as to the retaliation claim and remand for further proceedings.

2. Additionally, TxDot presented no evidence the decision to terminate Romo was made by persons with no knowledge of his protected activity. *See Marsaglia*, 22 S.W.3d at 5.