Jail Administrator." The Department's job posting for the position noted that a "Residential Probation Officer certification [is] preferred." Johnson met the posting's minimum qualifications, which included a bachelor's degree and five years' experience in criminal justice program administration. On his application, Johnson answered "N/A" to a question inquiring whether the applicant possessed a license, certification, or other authorization related to or required by the position for which he was applying.

After the job posting closed, the Department reviewed the applications it had received and conducted a screening to determine which of the "large number of applicants" would be interviewed. In conducting this screening, the Department decided to make the residential probation-officer certification mandatory, as opposed to a preferred requirement. Thus, the Department selected for interview only those applicants who had listed that they possessed such certification. Johnson was not selected for an interview and did not get the job.

Johnson, an African-American, filed a lawsuit against the Department,[1] alleging racial discrimination in the Department's employment practices. *See* Tex. Lab. Code Ann. § 21.051 (West

---

[1] Three other plaintiffs—Arthur Cooke, DeQuinna Moore, and Ernest Cortez—joined Johnson in the lawsuit. The plaintiffs' allegations related to employment practices involving several positions for which they were not hired. This appeal, however, concerns only the narrow issue of Johnson's claim as to a particular position—that of residential/state jail administrator. Because this is an interlocutory appeal, the plaintiffs may not proceed to a trial on the merits during the pendency of this appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(b) (West Supp. 2004). The Department filed a motion to sever Johnson's claim concerning the residential/state jail administrator position from the plaintiffs' remaining claims so that the trial could proceed; the trial court has not ruled on that motion, and the plaintiffs have not sought a severance.

1996).  He asserted that the Department's actions in connection with several job promotions he was denied resulted in disparate treatment of him and that the Department's selection processes for supervisory positions had a disparate impact upon racial minorities.  In response to the lawsuit, the Department embarked upon lengthy and intricate procedural maneuvers, attempting to dispose of the plaintiffs' suits with motions to dismiss for lack of subject-matter jurisdiction, motions for summary judgment, special exceptions, pleas to the jurisdiction, and interlocutory appeals.  On the particular matter at issue in this interlocutory appeal—the Department's failure to hire Johnson for the position of residential/state jail administrator—the Department initially filed a motion for summary judgment, which the trial court denied.  About three months later, the Department filed a plea to the jurisdiction concerning the same discrete matter, asserting sovereign immunity and that Johnson had fraudulently pleaded facts to confer jurisdiction on the court; the trial court denied the plea.  The Department reasserts its arguments in this interlocutory appeal of the trial court's denial of its plea to the jurisdiction.

## DISCUSSION

*Standard of review*

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action.  *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.).  In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to

3

confer jurisdiction on the trial court. *See id.* Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Caldwell*, 23 S.W.3d at 135.

In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," looking to the pleader's intent and accepting the factual allegations as true. *Caldwell*, 23 S.W.3d at 135. "The truth of the plaintiff's allegations is at issue only if the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction on the court." *Id.* Further, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

### Sovereign immunity

In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Texas Parks & Wildlife Dep't v. Miranda*, 47 Tex. Sup. Ct. J. 386, 389, 2004 Tex. LEXIS 304 (Apr. 2, 2004); *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The Texas Commission on Human Rights Act (the Act) provides a limited waiver of sovereign immunity when a governmental unit has committed employment discrimination on the basis of race, color, disability, religion, sex, national origin, or age. *See* Tex. Lab. Code Ann. § 21.002 (West Supp. 2004) (defining "employer" to include political subdivision of state or county, municipality, state agency), § 21.051 (outlining circumstances under which "employer" commits unlawful employment practice). For a

4

suit to proceed against a governmental unit under a statute permitting such suit, the court must first look to the terms of the Act to determine the scope of its waiver and then "consider the particular facts of the case . . . to determine whether it comes within that scope." *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001).

The Act here allows suit against a governmental unit only when it discriminates *because of* race. *See* Tex. Lab. Code Ann. § 21.051. The Department urges that immunity has not been waived because Johnson has failed to establish by his pleadings and the evidence that he was denied the job because of his race. The Department asserts that the evidence indicates the Department did not interview Johnson because he did not possess a residential probation officer certification; nothing in the evidence indicates that he was not interviewed because he is black. Because this decision was not based on race, the Department argues, Johnson has not pleaded facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Miranda*, 47 Tex. Sup. Ct. J. at 390, 2004 Tex. LEXIS 304; *Texas Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Miranda*, 47 Tex. Sup. Ct. J. at 390; *Jones*, 8 S.W.3d at 637.

### *Plea to the jurisdiction*

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Miranda*, 47 Tex. Sup. Ct. J. at 391; *Bland*, 34 S.W.3d at 555. Whether undisputed facts establish

5

a trial court's jurisdiction is a question of law. *Miranda*, 47 Tex. Sup. Ct. J. at 390. However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *Id.*; *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 n.3 (1st Cir. 2001) (in certain situations, predicate facts can be so inextricably linked to merits of controversy that district court may "defer resolution of the jurisdictional issue until the time of trial"); *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1170 (6th Cir. 1997) ("[W]hether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case."); *Williamson v. Tucker*, 645 F.2d 404, 413 n.6, 416 n.10 (5th Cir. 1981) (court's role in determining jurisdictional facts may be more limited in cases in which jurisdictional attack implicates merits of plaintiff's cause of action).

In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Miranda*, 47 Tex. Sup. Ct. J. at 391. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.*; *see also Texas Parks & Wildlife Dep't v. Dearing*, No. 03-03-00131-CV, slip. op. at 9-10, 2004 Tex. App. LEXIS 80, at *14-15 (Tex. App.—Austin Jan. 8, 2004, pet. filed) (fact issue as to when limitations period began running precluded grant of plea to jurisdiction). Only if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue may the trial court rule on the plea to the

6

jurisdiction as a matter of law. *Miranda*, 47 Tex. Sup. Ct. J. at 391. Thus, we turn to the evidence to determine whether it creates a fact question regarding the jurisdictional issues.

### Johnson's claims

Johnson sued the Department under the Act. *See* Tex. Lab. Code Ann. § 21.051. In the Act, the legislature intended to correlate state law with federal law in employment-discrimination cases. *Id.* § 21.001; *see NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Among the Act's purposes is the promotion of federal civil-rights policy. *See Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 87-88 (Tex. App.—Austin 1995, no writ). Adhering to legislative intent, Texas courts have looked to federal law in interpreting the Act's provisions. *See NME Hosps., Inc.*, 994 S.W.2d at 144; *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Kitchen*, 903 S.W.2d at 87-88.

Johnson first alleges that the Department's failure to promote him resulted in disparate treatment because of his race. To establish a prima facie case of discrimination in the denial of an employment position, Johnson must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for the position; (3) despite his qualifications, he was rejected; and (4) after he was rejected, the position remained open, and the employer continued to seek applicants with Johnson's qualifications. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Scales v. Slater*, 181 F.3d 703, 708 (5th Cir. 1999); *Romo v. Texas Dep't of Transp.*, 48 S.W.3d 265, 270-71 (Tex. App.—San Antonio 2001, no pet.). Johnson must assert a prima facie case of racial discrimination for the court to have subject-matter jurisdiction over his disparate-treatment claim.

7

Employment-discrimination cases employ a unique burden-shifting analysis: first, the employee must prove his prima facie case, which entitles him to a presumption of discrimination; then the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for its action; once the employer has articulated such reason, the burden shifts back to the plaintiff to prove that the reason is merely a pretext for discrimination. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995); *Romo*, 48 S.W.3d at 270; *Jaso v. Travis County Juvenile Bd.*, 6 S.W.3d 324, 328 (Tex. App.—Austin 1999, no pet.).

Employment-discrimination cases can appropriately be decided as a matter of law in summary-judgment proceedings if, after the plaintiff establishes a prima facie case, the evidence conclusively establishes a nondiscriminatory reason for the employer's decision or if the plaintiff creates only a weak fact issue as to whether the employer's reason was untrue or pretextual. *See Romo*, 48 S.W.3d at 270 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000)). The supreme court has recently held that a summary-judgment standard of proof applies to pleas to the jurisdiction. *See Miranda*, 47 Tex. Sup. Ct. J. at 392. Thus, we first consider whether Johnson has alleged a prima facie case.

It is undisputed that Johnson, an African-American, is a member of a protected class; that he applied for the residential/state jail administrator position; that he was rejected for the position; and that after his rejection the position remained open and the Department continued to seek applicants. The jurisdictional issues here are whether Johnson was qualified for the position and whether the Department continued to seek similarly qualified applicants after rejecting him. If

8

the evidence creates a fact question regarding either of these issues, we must affirm the district court's denial of the Department's plea to the jurisdiction. *See Miranda*, 47 Tex. Sup. Ct. J. at 391.

We first consider the evidence of whether Johnson was qualified. It is undisputed that he was qualified initially, according to the Department's job posting, which merely listed the certification as "preferred," not a mandatory qualification. The Department contends that Johnson became "unqualified" during the screening process when the certification became mandatory. The Department urges that, although this screening decision may have been a bad business decision or procedurally unfair because it gave no notice to applicants that the "preferred" certification would become mandatory, it does not amount to employment discrimination because the decision was designed to reduce the number of applicants who would be interviewed and was not motivated by race.

Johnson alleges that he met the certification requirement under a Department regulation that exempted him from certification. *See* 37 Tex. Admin. Code § 163.33(c)-(h) (2004). The regulation provides that a community supervision officer must become certified by taking courses and an examination within a year after becoming employed as a community supervision officer. *See id.* § 163.33(c). However, an officer who "was employed by any CSCD [Community Supervisions and Corrections Department] in this state on or at any time before September 1, 1987, is exempt from the requirements of the certification program." *Id.* Johnson asserts that by virtue of being employed by Brazoria County's CSCD since 1983, he met the grandfather exemption from the certification requirement and should have been interviewed. *See Bloom v. Texas State Bd. of*

9

*Exam'rs of Psychologists*, 492 S.W.2d 460, 461 (Tex. 1973) ("purpose of grandfather provisions in licensing acts is to exempt from statutory regulations those members who have acceptably followed their profession or trade for a required period of years").  At the very least, he asserts, there is a fact issue as to whether he was "qualified" under the stricter screening criterion.

We agree with Johnson that his employment with the Brazoria County CSCD exempted him from the certification requirements.  *See* 37 Tex. Admin. Code § 163.33(c) (community supervision officer who was employed by CSCD before September 1, 1987 "is exempt from the requirements of the certification program").  The Department retorts that in order to maintain the grandfather exemption, Johnson was subject to the certification maintenance requirement of eighty hours of additional training each biennium.  *See id.* § 163.33(b), (h).  We disagree.  Subsection (c) of the regulation clearly states that an exempt officer is exempt "from the requirements of the certification program."  Surely such requirements would entail not only the initial certification but also additional requirements to keep the certification current.  Because Johnson qualifies for the grandfather exemption, he could reasonably be considered "qualified" for a position requiring certification.

We next consider the second jurisdictional issue:  whether the other applicants who were interviewed had the same or similar qualifications as Johnson.  The pleadings contain two charts—one compiled by the Department and one by Johnson—that compare Johnson's qualifications with those of the applicant who received the position, Kirk Long.  Unsurprisingly, Johnson's chart leaves the impression that Johnson was the better candidate, while the Department's

10

chart makes Long the clear choice. Such fact-specific inquiries cannot be resolved in a plea to the jurisdiction.[2]

The Department cites *Deines v. Texas Department of Protective & Regulatory Services* for the proposition that courts should respect an employer's business-judgment decisions and not scrutinize the employer's judgment as to who is best qualified to fill a position. *See* 164 F.3d 277, 281-83 (5th Cir. 1999). Although we agree with this proposition generally, we conclude that it does not decide the issue here: whether the evidence created a fact issue concerning Johnson's prima facie case. This Court does not conduct fact-finding; yet, that is essentially what the Department asks of us.

Because the evidence creates a fact issue on the fourth prong of Johnson's prima facie case for discrimination—whether the Department continued to interview similarly qualified applicants after rejecting him, *see Hicks*, 509 U.S. at 506—the issue must be resolved by the factfinder, and the trial court properly denied the Department's plea to the jurisdiction. *See Miranda*, 47 Tex. Sup. Ct. J. at 391. Also, because there is a fact issue on whether Johnson has alleged a prima facie case, we need not proceed to the second and third steps of the burden-shifting analysis—whether the Department has produced evidence of a legitimate, nondiscriminatory reason for not hiring Johnson, and whether the evidence creates a fact issue on whether that reason is a mere pretext.[3]

---

[2] The Department also cites Long's certification as evidence that he is more qualified than Johnson. Because we conclude that Johnson held the functional equivalent of the certification by virtue of his exemption, this argument is unpersuasive.

[3] Were we to reach those steps, it appears that the evidence does not conclusively establish a nondiscriminatory reason and creates a fact issue on whether that reason is a pretext. *See Romo*

11

*Fraudulent pleadings to confer jurisdiction*

        The Department also asserts that Johnson, in bad faith, fraudulently pleaded facts to confer jurisdiction on the trial court and that under the true facts, the court lacked subject-matter jurisdiction. *See Curbo v. State*, 998 S.W.2d 337, 342 (Tex. App.—Austin 1999, no pet.). However, a plaintiff cannot be said to have fraudulently pleaded jurisdictional facts when those very facts are in dispute. Although the Department believes that Johnson was clearly not qualified for the position and that, therefore, he had no prima facie case and necessarily pleaded fraudulently that he was qualified, for the reasons already discussed, we disagree. We overrule the Department's sole issue.[4]

## CONCLUSION

        The Department is not entitled to a dismissal based on lack of subject-matter jurisdiction or sovereign immunity. The evidence creates a fact issue concerning whether Johnson

---

*v. Texas Dep't of Transp.*, 48 S.W.3d 265, 270 (Tex. App.—San Antonio 2001, no pet.). The Department's "reason"—that Johnson did not possess the certification—begs the question: Was the imposition of the certification requirement itself motivated by race? Johnson's pleadings and affidavit allege that he had tried to obtain the certification, but the Department had refused him the opportunity to acquire it. The Department rejoins that the screening of applicants based on this additional qualification could not have been based on race because one black applicant, who did have the certification, was interviewed. However, this contention says nothing about the number of otherwise qualified black applicants who did not have the certification. It also says nothing about Johnson's other claim, that the Department's screening had a disparate impact on minorities. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) (employment practices imposing job requirements that are fair in form but discriminatory in impact must bear "demonstrable relationship to successful performance of the jobs for which [they were] used"); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (proof of discriminatory motive is not required for disparate-impact cases; practices with disparate impact must be justified by "business necessity").

    [4] Johnson asks this Court to impose sanctions on the Department for its litigation tactics throughout these proceedings and because this is a frivolous appeal. *See* Tex. R. App. P. 45. We deny the request for sanctions.

has established a prima facie case of racial discrimination and whether the Department's screening criterion was a mere pretext or had a disparate impact on minorities. We therefore overrule the Department's sole issue and affirm the district court's order denying the Department's plea to the jurisdiction.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   May 20, 2004

13