# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00763-CV

**City of Austin Firefighters' and Police Officers' Civil Service Commission;
City of Austin Firefighters' and Police Officers' Civil Service Director;
Chief Brian Manley; and the City of Austin, Appellants**

**v.**

**Kenneth Casady and Austin Police Association, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-17-002183, HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, the City of Austin Firefighters' and Police Officers' Civil Service Commission (the Commission); the City of Austin Firefighters' and Police Officers' Civil Service Director (the Commission Director); Chief Brian Manley; and the City of Austin (collectively, the City) challenge the district court's orders denying the City's plea to the jurisdiction and granting the application to compel arbitration filed by Kenneth Casady and the Austin Police Association (jointly, the APA). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). The APA filed a grievance concerning the expiration of the eligibility list for promotion to the rank of police sergeant while candidates whose names remained on the list had not been promoted. The City denied the grievance and did not agree to participate in arbitration. The APA sued the City seeking an order compelling the City to arbitrate the parties' dispute. For the reasons that follow, we reverse

the district court's order denying the City's plea to the jurisdiction, dismiss the APA's claims for lack of subject matter jurisdiction, and vacate the district court's order compelling arbitration.

## STATUTORY AND CONTRACTUAL FRAMEWORK

Chapter 143 of the Local Government Code, the Civil Service Act, governs, as relevant here, the employment and discipline of police officers. *See generally* Tex. Loc. Gov't Code §§ 143.001–.403 (Chapter 143). In addition, as authorized by Chapter 143, the City and the APA entered into a Meet and Confer Agreement (M&C Agreement). *See id.* § 143.306. The M&C Agreement endorses Chapter 143 and is binding on the City, the APA, and the police officers covered by the agreement. *See id.* § 143.306(a); Agreement Between the City of Austin & the Austin Police Ass'n, art. 1, § 2, art. 2, § 6 (effective Oct. 1, 2013, as amended effective Dec. 10, 2015) (Agreement). When there is a conflict between the M&C Agreement and Chapter 143, the M&C Agreement controls. Tex. Loc. Gov't Code § 143.307(b) (providing that meet and confer agreement "preempts any contrary statute, executive order, local ordinance, or rule"); *see* Agreement, art. 24, § 2(a) (providing that terms of M&C Agreement preempt statute, order, ordinance, or rule with which they specifically conflict only to extent of conflict). Chapter 143 provides that the district court of the judicial district in which a city is located "has full authority and jurisdiction on the application of either party aggrieved by an act or omission of the other party related to a right, duty, or obligation provided by a written agreement" to issue any writ, order, or process appropriate to enforce the agreement. Tex. Loc. Gov't Code § 143.306(c).

The city council establishes by ordinance the classifications of police officers, which are provided by the Civil Service Commission, and the number of positions in each classification.

*See id.* § 143.021(a). The civil service classifications at the Austin Police Department are: chief of police, assistant chief of police, commander, lieutenant, sergeant, corporal/detective, and police officer. Candidates for promotion to corporal/detective, sergeant, lieutenant, and commander are made through the procedure set out in Chapter 143 and the M&C Agreement. *See id.* §§ 143.028–.036; Agreement, art. 13.[1] Candidates eligible for promotion must take a written exam. Notice of the sources from which exam questions will be taken must be posted before the 90th day before the exam is held, and notice of the exam must be posted before the 30th day before the exam is held. *See* Tex. Loc. Gov't Code §§ 143.028, .029(a), (b). Those who score seventy percent or higher proceed to an assessment center from which eligibility lists are created for promotions to the next rank. *See id.* §§ 143.031–.035; Agreement, art. 13, §§ 1–6. The M&C Agreement provides that the City "shall make reasonable efforts to provide a six (6) month study time window prior to promotional examinations, but it is recognized that expiration or exhaustion of a(n) (eligibility) list may necessitate an earlier examination." Agreement, art. 13, § 5. Promotional appointments are made from eligibility lists when vacancies occur. *See* Tex. Loc. Gov't Code § 143.036. Under Chapter 143, eligibility lists expire one year after the exam date. *See id.* § 143.036(h). However, under the M&C Agreement, eligibility lists expire two years after being posted.[2] *See id.* § 143.307; Agreement, art. 24, § 2(a).

---

[1] Commanders are appointed to assistant chief by the chief of police. *See* Tex. Loc. Gov't Code § 143.014.

[2] When there is a conflict between the M&C Agreement and Chapter 143, the M&C Agreement provides that it controls. *See* Agreement, art. 24, § 2(a)

Chapter 143 allows an agreement to establish a procedure for resolution of disputes "related to a right, duty, or obligation provided by the agreement, including binding arbitration on interpretation of the agreement." Tex. Loc. Gov't Code § 143.306(b). The M&C Agreement established such a grievance procedure. *See generally* Agreement, art. 20. The M&C Agreement defines grievance as "any dispute, claim, or complaint involving the interpretation, application, or alleged violation of any provision of this [Agreement]." *See id.* art. 20, § 2. The procedural steps under the M&C Agreement include the filing of a grievance by an aggrieved officer or by the APA, evaluation by the APA grievance committee, submission to the chief of police if the grievance is determined to be valid, a response by the chief of police, submission to arbitration by the APA if the dispute is not resolved by the response, and an arbitration hearing. *See id.* art. 20, § 4.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 2016, the APA filed a contract grievance with the APA grievance committee on behalf of Corporal David Silva. On October 5, 2016, the APA filed a second grievance on behalf of Silva and six additional corporals. The grievances complained that the eligibility list for promotion to sergeant would expire on October 7, 2016; that the exam for promotion to commander had not been formulated so that promotions to commander and subsequent vacancies and promotions in lower ranks, including sergeant, had not occurred; and that the aggrieved corporals were therefore "frustrated in their intent" to seek promotion to sergeant before the list expired. The grievances requested that "[t]he test for the promotion to Commander . . . be held in time for a promotion list to Commander to be created and filled in time for a vacancy to be created for Lieutenant and subsequently for Sergeant, before the expiration of the [eligibility] list on

4

October 7, 2016." Alternatively, the grievances requested "a *pro forma* or temporary promotion to Commander, Lieutenant, and Sergeant in order to create the vacancies [requested], in accordance with past pattern and practice . . . ." or a two-month extension of the eligibility list for promotion to sergeant. The grievances also requested that future exams be scheduled "to have eligibility lists created upon the expiration of the previous lists."

The grievances were submitted to the chief of police, and on October 7, 2016, he denied the grievances. The chief explained that, while there were two commander vacancies at the time, there was no existing promotional eligibility list from which to fill those vacancies so that no "trickle-down promotions" could be lawfully made. The chief further explained that because there were no sergeant vacancies at the time, no promotions to sergeant could be lawfully made. In denying the alternative requests for relief, the chief stated that (1) there was no past pattern of "pro forma" promotions and that the prior instance the APA appeared to cite involved formal action by the city council and was factually distinguishable from the instant request and (2) extension of the expiration date of the eligibility list was not authorized by the M&C Agreement, would require a negotiated contract amendment ratified by the city council, and would violate Chapter 143.

On October 20, the APA notified the chief of police that it intended to submit the grievances to arbitration. The record contains no response to this notice. On May 18, 2017, the APA filed suit in district court alleging that the City had denied its grievances and had refused to arbitrate. The APA sought declaratory judgment on the issue of whether the M&C Agreement was violated and a writ of mandamus ordering the City to arbitrate the promotional issue. In the petition, the APA asserted that the City's immunity was waived by section 180.006 of the Texas

Local Government Code. *See* Tex. Loc. Gov't Code § 180.006 (waiving governmental immunity for certain claims involving denial of monetary benefits or civil penalties). The APA subsequently filed an application to compel arbitration and motion to abate the proceeding pending arbitration. The City filed a plea to the jurisdiction based on governmental immunity and lack of standing. After the APA filed a response and the City filed a reply, a hearing was held at which the district court granted the APA leave to amend its petition. In its First Amended Petition for Declaratory Judgment, Writ of Mandamus, and Motion to Compel Arbitration, the APA revised the asserted basis for waiver of immunity, this time citing section 143.306 of the Local Government Code. *See id.* § 143.306(c) (providing that district court of judicial district in which city is located has jurisdiction on application by either party to M&C agreement aggrieved by act or omission of other party related to right, duty, or obligation provided in agreement). The City filed an amended plea to the jurisdiction; the APA did not file an amended response. After a second hearing, the district court, in separate orders, (1) denied the City's plea to the jurisdiction and (2) granted the APA's motion to compel arbitration and abated the proceeding pending arbitration. This interlocutory appeal followed.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012). A plea questioning the trial court's subject matter jurisdiction raises questions of law that we review de novo. *Houston Belt & Terminal Ry. v. City of Hous.*, 487 S.W.3d 154, 160 (Tex. 2016). When, as here, a plea to the jurisdiction challenges the pleadings, we must determine if the pleader has alleged sufficient facts to affirmatively

6

demonstrate the trial court's jurisdiction to hear the cause. *Id.* at 160; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). We look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Houston Belt & Terminal*, 487 S.W.3d at 160; *Westbrook v. Penley*, 231 S.W.3d 389, 405 (Tex. 2007). In determining a plea to the jurisdiction, the trial court may consider any evidence the parties have submitted and must do so when necessary to resolve the jurisdictional inquiry. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

When it applies, governmental immunity protects political subdivisions of the State, such as the City, from suit. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Immunity from suit deprives a trial court of subject matter jurisdiction unless the legislature has expressly consented to the suit. *City of Dall. v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011). Because immunity from suit implicates a court's subject matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *Houston Belt & Terminal*, 487 S.W.3d at 160. Chapter 143 provides a limited waiver of immunity for disputes related to a right, duty, or obligation under an M&C agreement, *see* Tex. Loc. Gov't Code § 143.306(c), and for appeal to the district court of a decision by the Commission, *see id.* § 143.015; *see also id.* § 180.006 (providing limited waiver of immunity for certain claims involving denial of monetary benefits or civil penalties). Official immunity is an affirmative defense that protects government employees from personal liability. *University of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). Governmental employees are entitled to official immunity from a suit arising from the performance of their discretionary duties performed in good faith and within the scope of their authority. *Id.* When a state official files a plea to the jurisdiction,

7

he invokes the immunity from suit held by the government itself. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007).

Our resolution of the jurisdictional inquiry in this case involves statutory construction, which is a question of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or unless the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). We must also construe the M&C Agreement as we would any other contract, reviewing its meaning de novo. *City of Austin Firefighters' & Police Officers' Civ. Serv. Comm'n v. Stewart*, No. 03-15-00591-CV, 2016 Tex. App. LEXIS 3829, at *7–8 (Tex. App.—Austin Apr. 14, 2016, pet. denied) (mem. op.). We interpret the contract as a whole and in accordance with the plain meaning of its terms. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). Our primary concern is to ascertain the parties' true intent as expressed by the plain language in the agreement, and we ensure that no provision is rendered meaningless. *Id.* at 892–93. We assign terms their ordinary and generally accepted meanings unless the contract directs otherwise. *Id.* at 893. "If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Id.* A contract is not ambiguous merely because the parties offer conflicting interpretations, but only when the contract is actually susceptible to two or more reasonable

interpretations. *Id.* "'The fact that the parties may disagree about the [agreement's] meaning does not create an ambiguity.'" *Id.* (quoting *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)).

**DISCUSSION**

In its first issue, the City argues that the district court erred in denying its plea to the jurisdiction because governmental immunity—and official immunity as to the Commission, the Commission Director, and Manley—deprived the district court of subject matter jurisdiction. Governmental immunity protects the City from suit absent an express statutory waiver of immunity. *See Taylor*, 106 S.W.3d at 694 n.3. A legislative waiver of governmental immunity must be expressed in clear and unambiguous language. Tex. Gov't Code § 311.034; *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002). "For a suit to proceed against a governmental unit under a statute [that waives governmental immunity], the court must first look to the terms of the [a]ct to determine the scope of its waiver and then 'consider the particular facts of the case . . . to determine whether it comes within that scope.'" *Texas Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700, 704 (Tex. App.—Austin 2004, no pet.) (quoting *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)).

In its live pleading, the APA asserted waiver of immunity under section 143.306(c), which provides that a district court has full jurisdiction "on the application of either party [to an M&C agreement] aggrieved by any act or omission of the other party related to a right, duty, or obligation provided by" the M&C agreement. *See* Tex. Loc. Gov't Code § 143.306(c). The City argues that the APA has not identified any violation of a "right, duty, or obligation" provided under

9

the M&C Agreement and thus its claims do not fall within the scope of the limited waiver of immunity contained in section 143.306(c). We agree.

Relying on article 20, section 4 of the M&C Agreement, the APA contends that the City's violation of the M&C Agreement that brings the APA's suit within the jurisdictional waiver of section 143.306(c) is the City's refusal to arbitrate. *See* Agreement, art. 20, § 4 (providing that when grievance remains unresolved after filing and submission to chief of police, arbitration procedure shall be implemented by APA's notifying chief of police in writing of its intent to submit grievance to arbitration). However, under the ordinary meaning of the terms in section 143.306(c) and article 20, there must be an underlying violation of the M&C Agreement before arbitration is required. *See* Tex. Loc. Gov't Code § 143.306(c); Agreement, art. 20, §§ 2, 4 (read together, providing arbitration procedures for resolution of dispute involving provision of M&C Agreement); *see also Primo*, 512 S.W.3d at 892 (stating that we construe contracts in accordance with ordinary and generally accepted meanings of terms). As a practical matter, there must be a dispute involving a provision of the M&C Agreement to trigger the obligation to arbitrate. The refusal to arbitrate alone cannot constitute the violation of the M&C Agreement triggering the obligation to arbitrate. *See* Tex. Loc. Gov't Code § 143.306(c); Agreement, art. 20, § 4. In the absence of an alleged underlying violation of a provision affording a right, duty, or obligation under the M&C Agreement, arbitration was not required and the City's refusal to arbitrate does not constitute an independent violation. *See* Agreement, art. 20, §§ 2, 4.

Stated another way, the parties cannot arbitrate the refusal to arbitrate—and that is not what the APA requested. Rather, the APA asked the district court to order the City to arbitrate

10

"the promotional issue." Thus, to fall within section 143.306(c)'s limited waiver of immunity, the APA must have alleged an underlying violation of a right, duty, or obligation under a provision of the M&C Agreement related to promotion that created a dispute requiring arbitration. *See* Tex. Loc. Gov't Code § 143.306(c); Agreement, art. 20, §§ 2, 4. The only provisions of the M&C Agreement related to promotion that the APA cites are article 13, sections 5 and 7. Section 5 provides that "the City shall make reasonable efforts to provide a six (6) month study time window prior to promotional exams, but it is recognized that expiration of exhaustion of a list may necessitate an earlier examination." *See* Agreement, art. 13, § 5. By its plain language, this provision is discretionary on the part of the City and does not afford the APA a right or impose on the City a duty or obligation. *See* Tex. Gov't Code § 311.016(1) ("'May' creates discretionary authority or grants permission or a power."); *Primo*, 512 S.W.3d at 892. In its grievances, the APA also cited section 7, which provides that the promotional eligibility lists are valid for 24 months, superceding the 12-month expiration provided for in Chapter 143. *See* Tex. Loc. Gov't Code § 143.036(h), .307(b); Agreement, art. 13, § 7(b). However, it is undisputed that the City did not violate article 13, section 7 and that the lists expired after two years in accordance with the M&C Agreement. Thus, to the extent the APA purported to assert violations of article 13, sections 5 and 7, it has failed to allege an underlying act or omission related to a right, duty, or obligation under the M&C Agreement. *See* Tex. Loc. Gov't Code § 143.306(c); Agreement, art. 13, §§ 5, 7.[3]

---

[3] In its grievances, the APA also cited various other provisions of the M&C Agreement that it contends are implicated by its complaints, but it does not allege violations of these provisions or assert that they are bases for jurisdiction.

11

The City also argues that the APA cannot identify any underlying violation of a specific provision in the M&C Agreement related to promotions because the eligibility list expired by the terms of the M&C Agreement. The City urges that this is the case because it is Chapter 143, not the M&C Agreement, that requires vacancies before promotions can occur. *See* Tex. Loc. Gov't Code §§ 143.021 (providing that city council establishes number of positions in each classification), .036 (providing that promotional appointments are made when vacancies occur); Agreement, art. 13, § 7(b). In other words, the City urges, there is no right under the M&C Agreement to promotion when there are no vacancies and no provision in the M&C Agreement imposing on the City a duty or obligation to promote officers when there are no vacancies. We agree that the APA has not identified any provision in the M&C Agreement that the City violated by not making any promotions to sergeant when, as here, there were no vacancies at the rank of sergeant. *See* Tex. Loc. Gov't Code §§ 143.021, 036; Agreement, art. 13, § 7(b). Therefore, applying the plain language of section 143.036(c) to the particular facts of this case, we conclude that the APA has not alleged an act or omission related to a right, duty, or obligation provided in the M&C Agreement within the meaning of section 143.306(c) so as to bring its claims within that section's waiver of immunity. *See Marks*, 319 S.W.3d at 663; *Pochucha*, 290 S.W.3d at 867; *Cooke*, 149 S.W.3d at 704.

Nor is there any other applicable basis for waiver of the City's governmental immunity in this case. Although Chapter 143 provides a limited waiver of immunity for appeal of a decision by the Commission, *see* Tex. Loc. Gov't Code § 143.015, the APA did not appeal a decision of the Commission. Therefore, section 143.015 does not waive immunity on these facts. The APA's claims under the UDJA likewise fail to establish a waiver of immunity. While the

12

UDJA waives immunity for certain claims, it is not a general waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code § 37.006(b); *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). The UDJA "does not enlarge a trial court's jurisdiction" and "is merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (per curiam) (quoting *Sawyer Tr.*, 354 S.W.3d at 388). Here, the APA has not shown that there is an underlying waiver of immunity bringing its UDJA claims within the district court's jurisdiction. And while a governmental unit may be a proper party to a declaratory judgment action that challenges the validity or constitutionality of a statute, *see* Tex. Civ. Prac. & Rem. Code § 37.006(b); *Sefzik*, 355 S.W.3d at 622 & n.3, the APA does not challenge the validity or constitutionality of a statute here.

We conclude that on the facts before us, there is no express waiver of the City's governmental immunity and that the district court erred in denying the City's plea to the jurisdiction. *See Albert*, 354 S.W.3d at 373. We sustain the City's first issue.[4] Having held that the district court lacked subject matter jurisdiction, we further conclude that the district court's order compelling arbitration is void.[5] *See AD Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (stating that order is void when court has no jurisdiction to render it).

---

[4] Because we conclude that there is no waiver of governmental immunity, we need not address the City's additional arguments in its first issue concerning official immunity as to the Commission, the Commission Director, and Manley or its second issue in which it raises a question of standing.

[5] Accordingly, we also do not reach the City's third issue, in which it addresses the merits of the district court's order compelling arbitration.

**CONCLUSION**

For these reasons, we reverse the district court's order denying the City's plea to the jurisdiction, dismiss the APA's claims for lack of subject matter jurisdiction, and vacate the district court's order granting the APA's application to compel arbitration.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Dismissed for Want of Jurisdiction in Part; Vacated in Part

Filed:   July 6, 2018

14