**GREAT AMERICAN INSURANCE COMPANY, Petitioner,**

v.

**Robert PRIMO, Respondent**

No. 15–0317

Supreme Court of Texas.

Argued November 9, 2016

OPINION DELIVERED: February 24, 2017

Joseph J. Borders, Walker Wilcox Matousek, LLP, Chicago, IL, Stephen O. Venable, Walker Wilcox Matousek, LLP, Houston, for Petitioner.

Brock C. Akers, The Akers Firm, Houston, for Respondent.

Robert Primo, Houston, pro se.

Justice Brown delivered the opinion of the Court.

This case concerns the interpretation of an insurance contract. Specifically, it turns on the applicability of an insured-versus-insured exclusion in a directors-and-officers (D & O) liability-insurance policy. The trial court granted summary judgment for the insurer, Great American Insurance Company. The court of appeals reversed. Holding that the court of appeals incor-

rectly interpreted the exclusion's plain language, we reverse and render judgment for Great American.

## I

Robert Primo served at one time as a director and treasurer of Briar Green, a non-profit condominium association. In 2008, shortly before resigning his positions with the association, Primo wrote himself two checks, totaling just over $100,000, from Briar Green's account. Briar Green maintained Primo misappropriated the funds. But Primo insisted they were payment for management services and that he obtained the association board's approval before writing the checks.

Briar Green made a claim for the alleged loss with its fidelity insurer, Travelers Casualty & Surety Company. Travelers paid the claim in exchange for a written assignment of all of Briar Green's rights and claims against Primo for the loss. Travelers, standing in the shoes of Briar Green, then sued Primo to recover the funds. Primo, in turn, asserted a third-party claim against Briar Green. In addition, as an insured former director under Briar Green's D & O liability policy, Primo then demanded that Great American, which carried the D & O policy, defend him in the Travelers suit. But Travelers non-suited its claims against Primo, making a defense by Great American unnecessary. Primo also non-suited his third-party claims against Briar Green.

Primo then filed a contractual-indemnity action against Briar Green to recover the attorney's fees and expenses he had incurred in the Travelers suit. Great American provided a defense to Briar Green as required by its policy. That suit ended in a judgment for Primo for about $100,000 in damages and fees.

While the indemnity suit proceeded, Primo sued Great American in another action, also seeking reimbursement for the defense costs and attorney's fees he incurred in the Travelers suit. He asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, fraud, negligent misrepresentation, and violations of the Texas Insurance Code and the Prompt Payment of Claims Act.

Great American moved for summary judgment on two grounds. First, the insurer argued that collateral estoppel and the one-satisfaction rule barred Primo's suit because he had already collected his defense costs and attorney's fees in his contractual-indemnity action against Briar Green. Second, Great American argued that it owed no duty to defend Primo in the Travelers suit because that action fell within the D & O policy's insured-v.-insured exclusion. The exclusion proscribes coverage of claims made by an insured against an insured and those made "by, or for the benefit of, or at the behest of [Briar Green] or … any person or entity which succeeds to the interest of [Briar Green]." The trial court granted Great American's motion for summary judgment. After a divided court of appeals reversed the trial court, we granted review.

## II

We interpret insurance policies under the well-established rules of contract construction. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We have repeatedly affirmed that every contract should be interpreted as a whole and in accordance with the plain meaning of its terms. *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *see also Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). When reviewing policy language, we take

care to ensure that no provision is rendered meaningless. *Gilbert*, 327 S.W.3d at 126. We also refuse to insert language or provisions the parties did not use or to otherwise rewrite private agreements. *Crocker*, 246 S.W.3d at 606.

■ The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used. *See Gilbert*, 327 S.W.3d at 126 (explaining that "we look at the language of the policy because we presume parties intend what the words of their contract say"); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) ("The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument."). "Plain meaning" is a watchword for contract interpretation because word choice evinces intent. A contract's plain language controls, not "what one side or the other alleges they intended to say but did not." *Gilbert*, 327 S.W.3d at 127; *see also Crocker*, 246 S.W.3d at 606. And we assign terms their ordinary and generally accepted meaning unless the contract directs otherwise. *Crocker*, 246 S.W.3d at 606; *Gilbert*, 327 S.W.3d at 126.

■ If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). An ambiguity does not arise merely because a party offers an alternative conflicting interpretation, but only when the contract is actually "susceptible to two or more reasonable interpretations." *Id.* "The fact that the parties may disagree about the policy's meaning does not create an ambiguity." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).

## III

### A

■ Great American's primary argument is that the D & O policy's insured-v.-insured exclusion bars Primo's claims against it in this action. The exclusion provides in pertinent part:

> This Policy does not apply to any Claim made against any Insured by, or for the benefit of, or at the behest of [Briar Green] or ... any person or entity which succeeds to the interest of [Briar Green].

It is undisputed that as a former director of Briar Green, Primo is an insured under the D & O policy. So the exclusion means that no coverage exists for any claim made against Primo by "any person or entity which succeeds to the interest of" Briar Green. It is also undisputed that Briar Green assigned whatever claims it had against Primo to Travelers. In this action, Primo has sued Great American to recover defense costs he incurred when Travelers sued him to prosecute the claims it had obtained from Briar Green. So the question is whether Briar Green's assignment to Travelers of its claims against Primo means that Travelers "succeed[ed] to the interest of" Briar Green. If the answer is "yes," there is no coverage under the policy and we should render judgment for Great American.

The court of appeals addressed this question by relying on an interpretation it had given the term "successor" in *Augusta Court Co-Owners' Ass'n v. Levin, Roth & Kasner, P.C.*, 971 S.W.2d 119 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). In *Augusta Court*, which concerned a construction contract, the court of appeals held that "a 'successor' is one who not only takes another's place, but also maintains the character of the place taken. It contemplates an assumption of both rights

and obligations or 'stepping into the shoes' of another." *Id.* at 126 (relying on *Thompson v. N. Tex. Nat'l Bank*, 37 S.W.2d 735, 739 (Tex. Comm'n App. 1931, holding approved)). Under this definition, the court of appeals held, Great American had failed to show that Travelers succeeded to the interest of Briar Green, "because Great American has not shown that Travelers assumed Briar Green's obligations as well as its claims and rights." *Primo v. Great Am. Ins. Co.*, 455 S.W.3d 714, 724 (Tex. App.—Houston [14th Dist.] 2015).

Dissenting from the court of appeals' decision, Justice McCally contends the majority rewrote the policy to limit the exclusion to a "successor" in the corporate-transaction sense:

Nothing in the policy at issue suggests that "successor in interest," as applied to corporate transactions is what the parties intended by the word "succeeds." The language of the exclusion is purposefully broad: "by, or for the benefit of, or at the behest of." The language applies not only to an entity that succeeds to the Organization's interest, but also "any person" who succeeds to that interest. To substitute "successor in interest" for the chosen language narrows its application. The exclusion, as the Majority rewrites it, does not apply unless the claim against the insured is brought by an entity to whom the Organization or its subsidiary has fully transferred every asset and every liability. And, the rewritten exclusion virtually writes out "any person." Under this "corporate transaction" analysis adopted by the Majority, the very purpose of an "insured v. insured" exclusion—that is, to prevent collusion—is eliminated from this insurance policy.

*Id.* at 736–37 (McCally, J., dissenting). Instead, Justice McCally maintains, the plain meaning of "succeed to" is "[t]o fall heir to, inherit, come into possession of." *Id.* at 737 (quoting THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY 3134 (1971)). She concludes that because it is undisputed that "Travelers was, upon assignment, the rightful owner of Briar Green's interest in the claim filed against Primo[,]" the trial court was correct, on this ground alone, to grant summary judgment for Great American. *Id.*

**B**

We agree with Justice McCally. Indeed, in *Augusta Court* itself the court of appeals noted that "[t]he exact meaning of the word 'successor,' when used in a contract[,] depends largely on the kind and character of the contract, its purposes and circumstance, and context." *Augusta Court*, 971 S.W.2d at 125. This Court has held similarly:

A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule. . . . The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text. Those circumstances include, according to Professor Williston's treatise, "the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties."

*Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) (quoting 11 Richard A. Lord, *Williston on Contracts* § 32.7 (4th ed. 1999)).

In this case, unlike in *Augusta Court*, the contract at issue is a D & O insurance policy. More specifically, the term at issue appears within the policy's insured-v.-in-

sured exclusion. Such clauses typically provide that the insurer is not liable for claims made by one insured against another, which includes litigation between directors and officers and the entity which they serve. *See, e.g., Miller v. St. Paul Mercury Ins. Co.*, 683 F.3d 871, 874–75 (7th Cir. 2012); *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 168 F.3d 956, 958–59 (7th Cir. 1999); *Levy v. Nat'l Union Fire Ins. Co.*, 889 F.2d 433, 434 (2d Cir. 1989). In so doing, insured-v.-insured clauses prevent both collusive suits between business organizations and their directors and officers as well as actions arising out of the "bitter disputes that erupt when members of a corporate ... family have a falling out." *Level 3*, 168 F.3d at 958.

The court of appeals overlooked this context. Indeed, its interpretation of the exclusion makes collusive suits more likely, rather than less. Under the court of appeals' interpretation, an insured under a D & O policy need only assign its rights in any claim against another insured to a third party and the exclusion no longer applies. Moreover, the effect of the plain and ordinary meaning that we ascribe to the word "succeeds" in this case comports with the interpretation commentators and other courts have given insured-v.-insured clauses when an insured assigns its claim against a co-insured to a third party. *See, e.g., Niemuller v. Nat'l Union Fire Ins. Co.*, No. 92 Civ. 0070 (SS), 1993 WL 546678, at *3 (S.D.N.Y. Dec. 30, 1993); David E. Bordon & Ellen B. Van Vechten, 4 *Law and Prac. of Ins. Coverage Lit.* § 47:33 (2008) ("Courts have held that an insured[-v.-]insured exclusion bars coverage for claims by assignees of the insured."); Catherine E. Vance & Geoffrey L. Berman, *Last in Line; Do "Insured vs. Insured" Exclusions Apply to Assignees in Assignment for the Benefit of Creditors?*, 23 Am. Bankr. Inst. J. 12, 34 (Feb. 2004) ("An ordinary contract assignee is

undoubtedly bound by insurance[-]policy exclusions, including insured[-v.-] insured clauses.").

Because Great American has shown as a matter of law that the insured-v.-insured exclusion in the D & O policy applies in this instance, the policy provides no coverage for the claims Primo asserts. So the trial court correctly disposed of all of Primo's claims on summary judgment. *See Page*, 315 S.W.3d at 532 ("When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive."). Accordingly, we reverse the judgment of the court of appeals and render judgment for Great American.