**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed December 21, 2018.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01054-CV

**BEST BUY STORES, L.P., Appellant**
**V.**
**SHOPS AT PINNACLE PARK, LLC, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-04728**

## MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Fillmore

This is an appeal of portions of the trial court's rulings on cross–motions for summary judgment regarding the terms of a commercial real estate lease (Lease). Best Buy Stores, L.P. (Best Buy or Tenant) appeals the trial court's grant of summary judgment in favor of Shops at Pinnacle Park, LLC (Pinnacle Park or Landlord) and the denial of Best Buy's motion for summary judgment regarding payment of property taxes and security service costs under the Lease. In three issues, Best Buy contends the trial court erred in granting summary judgment in favor of Pinnacle Park and against Best Buy because (1) Texas Property Code section 93.012 does not permit the trial court to award Pinnacle Park security service costs under the Lease, (2) the Lease did not permit Pinnacle Park to recover security service costs from Best Buy, and (3) the Lease did not require Best Buy to pay property taxes for 2015. We affirm the trial court's judgment in part,

reverse the trial court's judgment in part, and remand the case to the trial court for further proceedings consistent with this opinion.

## Background

In April 2005, Best Buy entered into a ten–year written Lease with POB Pinnacle GP, LLC (POB Pinnacle) to lease space (Premises) in Pinnacle Park Shopping Center (Shopping Center). By its terms, the Lease expired on January 31, 2016. POB Pinnacle subsequently assigned the Lease to Pinnacle Park. After the Lease expired, Best Buy filed suit against Pinnacle Park for declaratory relief and breach of contract. Specifically, Best Buy requested declaratory judgment that under Articles 25 and 27 of the Lease, it was not required to pay property taxes for the entirety of 2015 or January of 2016, and it was not required to pay any costs incurred by Pinnacle Park to provide security services for the Shopping Center during the Lease term. Best Buy alleged Pinnacle Park breached the Lease by charging Best Buy for security service costs and 2015 property taxes, and claimed actual damages in excess of $320,000 for overpayment of security services costs and property taxes.[1] Pinnacle Park counterclaimed against Best Buy for declaratory and monetary relief. Specifically, Pinnacle Park requested declaratory judgment that it was entitled to retain the entire payment made by Best Buy for its proportionate share of 2015 property taxes, Best Buy was required to pay its proportionate share of property taxes for January 2016, and Best Buy was required to pay its proportionate share of security service costs incurred by Pinnacle Park during the Lease term.[2]

Best Buy and Pinnacle Park stipulated there were no disputed material facts and filed cross-motions for traditional summary judgment. Best Buy's summary judgment evidence included, in relevant part, the affidavit of its Vice President of Real Estate, who testified, among other things,

---

[1] Best Buy paid its proportionate share of the 2015 property taxes and security service costs under protest.

[2] In the event the trial court ruled the Lease did not require Best Buy to pay security service costs, Pinnacle Park alternatively sought recovery in quantum meruit for the security services provided by Pinnacle Park.

about amounts Best Buy paid in property taxes for 2015 and for security services; the Dallas County Tax Office 2015 Tax Statement to Pinnacle Park; and the Lease. Pinnacle Park's summary judgment evidence included, in relevant part, the affidavit of the Chief Operating Officer of Vista Property Co., LLC (Vista), the authorized agent and property manager for Pinnacle Park, who testified, among other things, about amounts Best Buy paid in property taxes for 2015 and for security services; Vista's lease ledger showing charges and payments with respect to the Lease from October 31, 2009, through April 14, 2016; the Dallas County Tax Office 2015 Tax Statement to Pinnacle Park; and the Lease. Both parties' summary judgment motion arguments were based on their respective interpretations of the terms of Articles 25 and 27 of the Lease.

Article 27 of the Lease governed whether Best Buy was required to pay its proportionate share of the security services provided by Pinnacle Park for the Shopping Center. Article 27 provided:

> In each calendar year, Tenant shall pay Landlord, as additional rent, its proportionate share of Landlord's Operating Costs (as hereinafter defined).
>
> . . . .
>
> As used herein, the term "Landlord's Operating Costs" shall mean actual out-of-pocket expenses reasonably incurred by Landlord to maintain the Common Areas in the manner required of Landlord hereunder . . . [and] shall include, and be limited to, all costs and expenses incurred by Landlord in maintaining, repairing, lighting, cleaning, and removing snow, ice and debris per the specifications as set forth in Exhibit F attached hereto. In addition, Tenant shall pay to Landlord an administrative fee that shall not exceed five percent (5%) of the approved common area maintenance expenses[.]
>
> . . . .
>
> Notwithstanding the foregoing, the following shall, in all events, be excluded from Landlord's Operating Costs: depreciation, principal, interest and other charges on debt; the cost of capital improvements[;] management and overhead expenses, costs and fees, including, but not limited to, on-site wages, salaries and benefits[.]

Exhibit F to the Lease addressed snow removal, landscaping, parking lot lighting requirements, and requirements regarding sweeping debris and rubbish from the parking areas, landscaping and planters, and parking islands. Exhibit F did not address the provision of security services.

Best Buy moved for summary judgment on its claim for security service costs on the grounds the explicit language in Article 27 and Texas Property Code section 93.012 preclude Pinnacle Park from charging Best Buy for security service costs.[3] Best Buy contends section 93.012 of the property code allows Pinnacle Park to impose only those charges that are identified in or can be calculated based on language in the Lease. According to Best Buy, because the Lease "provide[d] the exclusive list of the Landlord's Operating Costs which Best Buy must share in paying" and security services were not on that list, Pinnacle Park could not assess any portion of the costs of providing security for the Shopping Center to Best Buy. On that basis, Best Buy argued there was no genuine issue of material fact as to any element of Best Buy's claim for breach of contract on security service costs and it was entitled to summary judgment as a matter of law.

Pinnacle Park's cross–motion for summary judgment asserted the plain language of Article 27 did not expressly exclude security services from the definition of "Landlord's Operating Costs," Pinnacle was required to "provide maintenance services and keep the shopping center in good order," security services constituted maintenance, Best Buy and other tenants requested that Pinnacle Park provide security services, and Best Buy paid for security services for two years without complaint. On that basis, Pinnacle Park requested the trial court to declare as a matter of law that it was entitled to retain the full amount paid by Best Buy for its proportionate share of the cost of security services provided by Pinnacle Park and grant summary judgment in favor of Pinnacle Park on Best Buy's breach of contract claims with respect to security service costs.

---

[3] In relevant part, section 93.012 of the Texas Property Code states: "(a) A landlord may not assess a charge, excluding a charge for rent or physical damage to the leased premises, to a tenant unless the amount of the charge or the method by which the charge is to be computed is stated in the lease, an exhibit or attachment that is part of the lease, or an amendment to the lease. (b) This section does not affect a landlord's right to assess a charge or obtain a remedy allowed under a statute or common law." TEX. PROP. CODE ANN. § 93.012(a), (b).

–4–

Article 25 of the Lease addressed Best Buy's obligation to pay property taxes. Article 25 provided:

> As used in this Article 25, Taxes "due and payable" during the Lease Term shall mean installments of Taxes for which the last date for payment without interest or penalty occurs during a calendar year that falls in whole or in part during the Lease Term (regardless of whether the Taxes due for such calendar year are attributed to another calendar year), it being understood however, that all Taxes payable by Tenant under this Lease shall be prorated for any partial calendar year at the beginning or end of the Lease Term based on the number of days in such calendar year that fall within the Lease Term.

Best Buy's motion for summary judgment asserted section 31.02 of the Texas Tax Code and the plain language of Article 25 required Best Buy to pay 31/365ths of a proportionate share of Pinnacle Park's property taxes that were due and payable without penalty on January 31, 2016, the termination date of the Lease. According to Best Buy, "[b]ecause taxes are paid in arrears," Article 25 "ensure[d] that no obligation to pay taxes remain[ed] after the [Lease] terminated . . . and after the fiscal year ha[d] closed." On that basis, Best Buy argued the summary judgment evidence conclusively proved Pinnacle Park breached the Lease by charging Best Buy its proportionate share of the 2015 property taxes. Best Buy requested declaratory judgment that Best Buy had no obligation to pay any portion of property taxes for 2016 that were not due and payable without penalty until January 31, 2017, and a money judgment for the "amount it overpaid for the 2015 Tax Year" under protest.

Pinnacle Park's cross–motion for summary judgment asserted the plain language of Article 25 established Best Buy was obligated to pay its proportionate share of property taxes for any portion of a tax year the Lease was in effect. On the basis of Article 25's express terms, Pinnacle Park requested the trial court declare as a matter of law that Pinnacle Park was entitled to retain the full amount paid by Best Buy for 2015 property taxes and Best Buy was required to pay its proportionate share of property taxes for January 2016, and grant summary judgment in favor of Pinnacle Park on Best Buy's breach of contract claims with respect to payment of property taxes.

The trial court's order on the parties' cross–motions for summary judgment granted in part and denied in part both parties' motions. As relevant to this appeal, the trial court granted summary judgment in Pinnacle Park's favor on Best Buy's money judgment claims for overpayment of security service costs and 2015 property taxes during the Lease term.

## Standard of Review

We review the trial court's ruling on a motion for summary judgment de novo. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). To prevail on a traditional motion for summary judgment, the moving party has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (per curiam). Once the moving party produces sufficient evidence to establish its right to judgment, the burden shifts to the non–movant to come forward with competent controverting evidence sufficient to raise a genuine issue of material fact. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016); *Leonard v. Knight*, 551 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (quoting *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

## Applicable Law

A successful breach of contract claim requires proof of the following essential elements: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the defendant's breach. *See Transitional Entity L.P. v. Elder Care L.P.*, No. 05-14-01615-CV, 2016 WL 3197160, at *6 (Tex. App.—Dallas May 27, 2016, no pet.) (mem. op.). Contract

formation requires a "meeting of the minds," which has been defined as the "parties' mutual understanding and assent to the expression of their agreement." *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 455 (Tex. App.—Dallas 2012, pet. denied). "The parties must agree to the same thing, in the same sense, at the same time." *Id.*

When interpreting a written contract, we ascertain and give effect to the written expression of the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We interpret the contract as a whole, and contract terms are given their plain, ordinary, and generally accepted meaning, unless the contract itself directs otherwise. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892–93 (Tex. 2017). "[N]o one phrase, sentence or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Nasser*, 508 S.W.3d at 258 (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). We seek to harmonize and give effect to all contract terms so that none will be rendered meaningless, *id.*, and "bea[r] in mind the particular business activity sought to be served" in order to "avoid . . . a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). Furthermore, we avoid construing a contract in a manner that would lead to absurd results. *See Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011).

Whether a contract is ambiguous is a question of law. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). "If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Great Am. Ins. Co.*, 512 S.W.3d at 893. A contract is not ambiguous merely because the parties offer conflicting interpretations, but only when the contract is actually susceptible to two or more reasonable interpretations. *Id.* The fact that the parties may disagree about the contract's meaning does not create an ambiguity. *Id.* If the contract contains an ambiguity, a fact issue arises as to the parties'

intent, and summary judgment is not the proper vehicle for resolving the contract dispute. *Plains Exploration & Prod. Co. v. Torch Energy Advisors, Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). A court may conclude a contract is ambiguous even though the parties did not plead ambiguity. *See Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase, N.A.*, 468 S.W.3d 200, 205 (Tex. App.— Houston [14th Dist.] 2015, no pet.) (citing *Sage St. Assocs. v. Northdale Const. Co.*, 863 S.W.2d 438, 445 (Tex. 1993)).

**Analysis**

*Security Costs*

In its second issue, Best Buy contends the trial court erred by determining that "security costs [were] included in maintenance," and granting summary judgment in favor of Pinnacle Park, because "the express language of the [Lease] can only be interpreted as excluding security costs" from Pinnacle Park's Operating Costs. Pinnacle Park responds that the trial court correctly determined Pinnacle Park was entitled to retain the full amount paid by Best Buy for security services because providing security services were part of Pinnacle Park's Operating Costs, as defined by the Lease, and part of its duty to "maintain" the premises.

Article 27 required Best Buy to pay Pinnacle Park "as additional rent, its proportionate share of [Pinnacle Park's Operating Costs[.]" "Operating Costs" were defined as "actual out-of-pocket expenses reasonably incurred" by Pinnacle Park "to maintain the Common Areas in the manner required" under the Lease, offset by any income Pinnacle Park received from non-tenants or non-occupants of the Shopping Center who used the Common Areas. Article 27 defined "Common Areas" as the parking areas, landscaping, sidewalks, driveways, pylon signs, and other "like areas" as reasonably determined by Best Buy and required Pinnacle Park to "maintain in good order, condition (comparable to other first-class shopping centers in the trade area) and repair" the Common Areas. Article 27 also prohibited Pinnacle Park from "us[ing] or permit[ing]

–8–

the Common Areas to be used in any manner so as to interfere with [Best Buy's] operation of its business[.]"

The parties agreed in Article 27 that Pinnacle Park's Operating Costs would "include, and be limited to, all costs and expenses incurred by [Pinnacle Park] in maintaining, repairing, lighting, cleaning, and removing snow, ice and debris" to meet the specifications agreed to by the parties in the Lease. The parties also agreed that certain costs, mainly relating to Pinnacle Park's internal expenses and significant repairs to the Shopping Center, were excluded from Pinnacle Park's Operating Costs.

The Lease did not specifically address the costs of security services for the Common Areas. Therefore, as relevant to the grounds for summary judgment raised by the parties, Pinnacle Park could recover a share of its security costs from Best Buy only if those costs were included in Pinnacle Park's Operating Costs incurred in fulfillment of its contractual duty to "maintain" the Common Areas. The parties did not define "maintain" or "maintenance" in Article 27. Therefore, we will give the words their plain, common, or generally accepted meaning because the Lease does not show the parties used the words in a "technical or different sense." *Torch Energy Advisors, Inc.*, 473 S.W.3d at 305.

The common meaning of the term "maintenance" is "the act of maintaining," "something that maintains," or "the upkeep of property or equipment." *Maintenance*, MERRIAM-WEBSTER, www.merriam-webster.com/dictionary/maintenance (last visited on December 14, 2018)). As to the term "maintain", the "common, ordinary meaning of the term is 'to keep in an existing state (as of repair, efficiency, or validity),' 'to sustain against opposition or danger,' or 'to continue or persevere in.'" *Hardy v. Commc'n Workers of Am. Local 6215 AFL-CIO*, 536 S.W.3d 38, 46 (Tex. App.—Dallas 2017, pet. denied) (quoting *Maintain*, MERRIAM-WEBSTER, www.merriam-webster.com/dictionary/maintain). Best Buy essentially argues the parties intended the term

"maintain" in Article 27 to mean "keep in an existing state (as of repair, efficiency, or validity),"
while Pinnacle Park contends the parties intended the term to also encompass "sustain[ing] against
opposition or danger."

We conclude both parties have reasonable bases for their respective interpretations of the
terms "maintain" and "maintenance" as used in Article 27. Because the Lease is subject to more
than one reasonable interpretation, it "is ambiguous, creating a fact issue on the parties' intent."
*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (quoting *J.M.
Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). Because the Lease was ambiguous
as to whether security costs were included in Pinnacle Park's Operating Costs, the trial court erred
by granting Pinnacle Park's motion for summary judgment. *See Torch Energy Advisors, Inc.*, 473
S.W.3d at 305 ("Summary judgment is not the proper vehicle for resolving disputes about an
ambiguous contract."); *Ticer v. Reed Migraine Ctrs. of Tex., PLLC*, No. 05-17-00721-CV, 2018
WL 6322167, at *2 (Tex. App.—Dallas Dec. 4, 2018, no pet. h.) (mem. op.). We resolve Best
Buy's second issue in its favor.

In its first issue, Best Buy asserts the trial court erred by granting summary judgment in
favor of Pinnacle Park because the Lease does not state the amount of the charge for security costs
or the method by which the charge is to be computed. *See* TEX. PROP. CODE ANN. § 93.012. Until
the fact issue regarding whether the parties intended for Pinnacle Park's Operating Costs to include
security costs is resolved, it cannot be determined whether the Lease complied with section 93.012
of the property code. Accordingly, the trial court erred to the extent it granted summary judgment
on the ground that the Lease did not meet requirements of section 93.012. We resolve Best Buy's
first issue in its favor.

*Property Taxes*

Best Buy contends on appeal that the trial court erred in granting summary judgment in favor of Pinnacle Park on the issue of property taxes because the plain language of Article 25 unambiguously required Best Buy to pay only a 31/365ths share of Pinnacle Park's 2015 real estate taxes that were due and payable without interest or penalty on January 31, 2016. Pinnacle Park, on the other hand, argues the trial court correctly determined it was entitled to retain the full amount paid by Best Buy for its proportionate share of the 2015 property taxes because Best Buy provided "no evidence that the parties intended to grant it a year-long exception from its property tax obligation simply because the Lease expired in January of [2016] rather than at the end of [2015]," and the unambiguous terms of the Lease showed Best Buy was required to pay its proportionate share of property taxes for "the entire time it occupied the Leased Premises."

Best Buy does not dispute that it occupied the Premises and the Lease was in effect for the entirety of 2015. Rather, Best Buy contends that because 2015 property taxes were due and payable without penalty on January 31, 2016, Article 25 required Best Buy to pay only "31/365ths of what otherwise would have been a full-year's pro rata share [of the 2015 property taxes] because Best Buy was only in the Premises for one month of 2016." Best Buy further argues that because 2016 property taxes were not due and payable without penalty until January 31, 2017, Best Buy was not required to pay any 2016 property taxes notwithstanding that the Lease was in effect through January 31, 2016.

Pinnacle Park avers Article 25 unambiguously required Best Buy to pay property taxes for "every day of the Lease Term," and the summary judgment evidence showed that Best Buy customarily paid Pinnacle Park its proportionate share of property taxes in January for the previous year's property taxes. According to Pinnacle Park, Best Buy's brief on appeal interprets Article 25 to absolve it from paying property taxes for 2015 based on an isolated sentence that Best Buy

supplemented with a "plethora of bracketed additional terms" not existing in the language of Article 25.

The terms of the Lease unambiguously show the parties intended Best Buy to pay property taxes during the Lease term. Article 25 provided that if property taxes on the Premises were "separately assessed," Best Buy was required to pay "all such taxes and assessments . . . due and payable to the taxing authority with respect to the Premises during the Lease Term promptly as the same shall become due an before interest or penalty accrues thereon." However, "[i]f the Premises [was] not already separately assessed by the applicable taxing authorities, Tenant [was required to] pay to Landlord Tenant's proportionate share of the Taxes due and payable with respect to the Shopping Center during the Lease Term." In the event property taxes were not separately assessed to Best Buy, the Lease calculated Best Buy's proportionate share of property taxes due and payable to Pinnacle Park based on the square footage of the Premises during the Lease term. "Lease Term" was defined as the ten year period beginning on the Commencement Date of the first Lease year and expiring on the last day of the tenth consecutive Lease year, in this case January 31, 2016. The Lease specified that property taxes payable by Best Buy would be "prorated for any partial calendar year at the beginning or end of the Lease term based on the number of days in such calendar year that f[e]ll within the Lease Term."

Interpreting the Lease as a whole, and construing the terms of the Lease so that no provision is rendered meaningless, we conclude Article 25 is unambiguous and Pinnacle Park's interpretation is correct. The Lease unambiguously contemplated and provided that Best Buy was required to pay property taxes assessed during the entirety of the Lease term, regardless of whether taxes on the "Premises [were] separately assessed" and billed to Best Buy or whether the property taxes were assessed to Pinnacle Park, in which case Best Buy would pay its proportionate share to Pinnacle Park. Article 25 also plainly stated Best Buy was obligated to pay property taxes "for

which the last date for payment without interest or penalty occurs during a calendar year that falls in whole or in part during the Lease Term (*regardless of whether the Taxes due for such calendar year are attributed to another calendar year*)" (emphasis added). Best Buy's interpretation of Article 25 would lead to an unreasonable, inequitable, and absurd result, requiring Best Buy to pay property taxes for the entirety of the Lease term, including all of 2015 and January 2016, if separately assessed to Best Buy, but for only one month of its proportionate share of property taxes for 2015 and no property taxes for January 2016 if not separately assessed; and would permit Best Buy to forgo paying its proportionate share of property taxes altogether for twelve months of the Lease Term, a result clearly not intended by the Lease. We resolve Best Buy's third issue against it.

## Conclusion

We affirm in part and reverse in part the trial court's order granting in part and denying in part Pinnacle Park's and Best Buy's traditional motions for summary judgment. We reverse the portions of the trial court's judgment denying Best Buy's request for a money judgment for overpayment of security service costs and granting Pinnacle Park's motion for summary judgment with respect thereto. In all other respects, we affirm the trial court's judgment. We remand this case to the trial court for further proceedings consistent with this opinion.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

171054F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

BEST BUY STORES, L.P., Appellant

No. 05-17-01054-CV     V.

SHOPS AT PINNACLE PARK, LLC,
Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-16-04728.
Opinion delivered by Justice Fillmore,
Justices Lang and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED** in part and **REVERSED** and **REMANDED** in part.

We **REVERSE** the portions of the trial court's judgment (1) denying appellant Best Buy
Stores, L.P.'s motion for summary judgment and (2) granting appellee Shops at Pinnacle Park,
LLC's motion for summary judgment as to security service costs and **REMAND** appellant Best
Buy Stores, L.P.'s claim for security service costs for further proceedings.

In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 21st day of December, 2018.