COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ROCK RIVER MINERALS, LP and MICHAEL L. CASS, | § | No. 08-23-00216-CV |
| | § | Appeal from the |
| Appellants, | | |
| | § | 112th Judicial District Court |
| v. | | |
| | § | of Upton County, Texas |
| PIONEER NATURAL RESOURCES USA INC., CROWNQUEST OPERATING, LLC, & CROWNROCK, LP, | § | (TC# 20-07-U4825-OTH) |
| Appellees. | | |

## MEMORANDUM OPINION

This case concerns the interpretation of an assignment of royalty interests. The facts are undisputed; the only legal issue before us is whether Appellant Michael L. Cass' assignment of his royalty interests in oil, gas, and mineral leases included a depth limitation. We hold that it did not and affirm the trial court's summary judgment endorsing the same view.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

By 1996, Cass owned a 2.125% overriding royalty interest in the production of minerals from lands that are part of the Amerada and Cameron-Simmons leases. Those leases are included in the North Pembrook Spraberry Unit and subject to a unit agreement that unitized the oil and gas rights in the Spraberry Formation. In 1996, Cass executed an "Assignment and Bill of Sale" in

favor of Parker & Parsley Development, L.P., which became Pioneer Natural Resources USA, Inc. The assignment and bill of sale signed by Cass grants, sells, conveys, assigns, and transfers to Pioneer's predecessor "all of the rights, interests, and properties described" in ten paragraphs listing the categories of interests being conveyed. Those paragraphs in turn either directly or indirectly reference an Exhibit A to the assignment that more particularly describes the lands and leases from which the interests derive. Exhibit A in turn describes the lands as "all lands from the surface of the earth to all depths located within the geographic boundaries of the [North Pembrook Unit] as identified in the Unit Agreement and Unit Operating Agreement . . . ." It describes the oil and gas leases as "all oil and gas leases, royalty interests and mineral interests included within the [North Pembrook Unit], as to the lands included within such Unit, from the surface of the earth to all depths. . . ."

Pioneer then assigned some of its interests to CrownRock, L.P. CrownQuest Operating, LLC is the operator of the leased lands. In 2016 Cass sold some of his royalty interests at certain depths (from the base of the Dean Formation to the base of the Wolfcamp formation) to predecessors of Rock River Minerals, LP and Craddick Partners, Ltd.

In 2018 and 2019, CrownQuest drilled 12 wells within the geographic boundaries of the assigned interests. Those wells produced from the Wolfcamp formation (which is deeper than the Spraberry formation) and gave rise to this dispute. Cass filed suit seeking a declaration that he continues to own a 2.125% overriding royalty interests in depths below the Spraberry Formation. Because Rock River and Craddick also had interests in the property, Cass joined them as involuntary plaintiffs.[1] We refer to Cass and Rock River collectively as Appellants and to Pioneer, CrownRock and CrownQuest as Appellees.

---

[1] Craddick was dismissed as a party because it assigned all its interests to Rock River.

The parties filed cross motions for summary judgment. As they do on appeal, Appellants argued that the 1996 assignment, because it incorporates the unit agreement by reference, conveyed only the royalty interests that were subject to that unit agreement (those from the Spraberry Formation). Conversely, Appellees argued that the assignment included no depth limitations because the exhibit describing the land states that it is "to all depths." The trial court denied Appellants' motion for summary judgment and granted Appellees' motions. The final judgment specifies that the assignment conveyed Cass' overriding royalty interests in the subject lands "from the surface of the earth to all geological depths underlying the surface of the earth, including geological depths below the base of the Spraberry formation, located within the geographic boundaries of the North Pembrook Spraberry Unit. . . . ." Appellants filed this appeal, challenging the trial court's grant of Appellees' motions for summary judgment and the denial of their motion.

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

A party is entitled to summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). "We review a trial court's summary judgment de novo". *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Although the denial of a motion for summary judgment cannot ordinarily be appealed, if there are cross motions for summary judgment, "we consider both motions and render the judgment that the trial court should have rendered." *Coastal Liquids Transp., LP v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001).

If the assignment and bill of sale is ambiguous, a fact issue exists, and summary judgment is inappropriate. In all events, if it is unambiguous, we interpret it as a matter of law. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744 (Tex. 2020). Determining whether a contract is

ambiguous is also reviewed de novo. *Piranha Partners*, 596 S.W.3d at 743; *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999).

## III. ANALYSIS

### A. Principles of contract interpretation

"As with any deed or contract, our task is to determine and enforce the parties' intent as expressed within the four corners of the written agreement." *Piranha*, 596 S.W.3d at 743; *Mark S. Hogg, LLC v. Blackbeard Operating, LLC*, 656 S.W.3d 671, 675 (Tex. App.—El Paso 2022, no pet.) (applying principles of contract interpretation to an assignment). "We consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Piranha*, 596 S.W.3d 744. A review of the assignment in this case requires us to review and harmonize not only the provisions of the assignment, but also the exhibit to the assignment and the referenced unit agreement. *In re Estate of Renz*, 662 S.W.3d 531, 539 (Tex. App.—El Paso 2022, pet. denied) ("[W]hen, as here, several instruments comprise a single transaction, those instruments must be construed together.").

### B. Description of the lands and leases in Exhibit A

We start with the granting language of the assignment and bill of sale. The assignment includes ten paragraphs describing interests conveyed, the first of which grants the following:

> All right, title and interest of Seller in, to and under the Oil, Gas and Mineral Leases described on Exhibit "A", including . . . the oil and gas leasehold estates, fee mineral interests, royalty interests, *overriding royalty interest*, and other interests *in the lands* which are *described on Exhibit A*, attached hereto and made a part hereof for all purposes. (emphasis added)

The description of the lands in Exhibit A then states:

4

> Included herein are *all lands* from the surface of the earth *to all depths* located within *the geographic boundaries* of the [North Pembrook Unit] as identified in the Unit Agreement and Unit Operating Agreement . . . (emphasis added).

The oil and gas leases and mineral deeds conveyed are described in Exhibit A, also by referencing the lands within the Unit:

> This conveyance covers and includes all oil and gas leases, royalty interests and mineral interests included within the above Unit, as to the *lands included within such Unit*, from the surface of the earth *to all depths*. . . . (emphasis added)

The Unit Agreement in turn contains a map that shows the sections in Reagan and Upton Counties which comprise the "Unit Area." The Unit Agreement also defines the "Unitized Formation" as "that subsurface portion of the Unit Area commonly known as the Spraberry Formation, which is that source of supply designated by the Railroad Commission of Texas as the Spraberry Trend Area Field."

As Cass argues, and Appellees agree, an exhibit to an assignment that describes the property can limit the property that is conveyed. *See, e.g., Posse Energy, Ltd. v. Parsley Energy, LP*, 632 S.W.3d 677, 695 (Tex. App.—El Paso 2021, pet. denied) (holding that an assignment's exhibit describing the conveyed lease "INSOFAR AND ONLY INSOFAR as the lease covers the proration units" limited the assignment to the depth of the proration unit); *Dupnik v. Hermis*, No. 04-12-00417-CV, 2013 WL 979199, at *2, 5 (Tex. App.—San Antonio Mar. 13, 2013, pet. denied) (interpreting assignment to transfer only surface rights because the exhibit described the property as "Tract No. two (the surface only)").

The exhibit in this case limits the conveyance of interests to those within the geographic boundaries of the unit. We then turn to the Unit Agreement to determine whether it unambiguously describes the geographic boundaries of the unit. Here is where the parties differ in their interpretations. Appellants urge us to define "geographic boundaries" to mean not just the

5

horizontal surface boundaries of the land, but also the vertical subsurface boundaries of the unitized formation. They point to the unit agreement's definition of "Unitized Formation" as "that subsurface portion of the Unit Area commonly known as the Spraberry Formation. . . ." and argue that "geographic boundaries" means the boundaries of the subsurface depths of the Spraberry formation. They reason that because the Unit Agreement pertains to the Spraberry Formation and Exhibit A references the Unit Agreement to identify the boundaries of the lands, the conveyance is limited to the depths of that formation.

Appellees, on the other hand, argue that the Unit Agreement is only used to determine the boundaries of the surface of the land, but not the depth of the land, from which the conveyed oil and gas rights derive. We agree with Appellees.

The incorporation of the Unit Agreement does not necessarily mean that every provision of that agreement is relevant to or limits the conveyance. In *Piranha*, for example, an assignment of interests attached as an exhibit included information about the land, an associated well, and a lease. *Piranha*, 596 S.W.3d at 745. The parties disagreed about which of those described the royalty interests that were conveyed: the land, the well, or the lease. After harmonizing the language of the assignment and the exhibit, the Court held that the assignment conveyed the royalty interests in production under the entire lease and that the information in the exhibit about the land and well only because it "more clearly identified the [] Lease under which the overriding royalty existed." *Id*. at 754; *see also Occidental Permian, Ltd. v. Citation 2002 Inv. LLC*, 689 S.W.3d 899, 906 (Tex. 2024) (holding that specific information in an exhibit to an assignment with depth specifications did not limit the conveyance to those depths but was "descriptive of tracts found within each conveyed estate"). The Unit Agreement here is incorporated for an express purpose: to describe the geographic boundaries of the lands in which the royalty interests are held. As with

6

the exhibit in *Piranha*, the Unit Agreement serves to more clearly identify the property by defining the boundaries but does not otherwise limit the conveyance.

The plain meaning of "geography" is "a science that deals with the description, distribution, and interaction of the diverse physical, biological, and cultural features of the earth's *surface.*" https://www.merriam-webster.com/dictionary/geography (last visited Sept. 17, 2024). The term "geographic boundaries," then, is interpreted according to its plain language as *surface* boundaries. *Mark S. Hogg*, 656 S.W.3d at 675–76 ("The expressed intent [of the parties] is determined by the plain language used in the contract."). The unit agreement clearly and unambiguously defines those surface boundaries. It incorporates an exhibit that lists all the tracts in the unit with their legal description and a map with "unit boundary" marked. The assignment therefore conveys the interests within those surface boundaries, but "to all depths."

Moreover, even if "geographic boundaries" encompassed subsurface depth boundaries, the grant is of the interests in "all lands from the surface of the earth to all depths located within the geographic boundaries of the [North Pembrook] *Unit*. . . ." and "all royalty interests and mineral interests included within the above *Unit*, as to the lands described within such *Unit*." (emphasis added). In interpreting agreements, "we concentrate of the specific language the parties chose. . . ." *Hogg*, 656 S.W. 3d at 656; *Great Am. Ins. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("word choice evinces intent."). Here, the parties chose the word "unit," not "unitized formation," to define the boundaries of the conveyance. The Unit Agreement defines that "Unit Area" as the "lands described by Tracts in Exhibit A and shown on Exhibit C. . . ." It describes "Tract" as "each parcel of land described as such and given a Tract number in Exhibit A." "Unitized Formation," on the other hand, is defined by the Unit Agreement as only "the subsurface portion of the unit area." The unit therefore is a larger area of which the unitized formation is only a part. Other provisions of

7

the assignment confirm this interpretation. Paragraph D of the assignment grants "[a]ll right, title and interest of Seller in any pooled or unitized acreage or rights included . . . within the lands described in Exhibit 'A'. . . . " This provision demonstrates that the parties distinguished between the "unitized acreage" and the "lands described in Exhibit A" and considered the former to be only a subset of the latter.

Had Cass intended to convey only royalty interests in the unitized formation or in the Spraberry Formation, he could have easily done so. *Cf. Posse Energy*, 632 S.W.3d at 694–95 (finding that the assignment was limited because the property description limited the interests conveyed to "the proration units"). Instead, he conveyed interests within the *unit* which is different from and not limited by the depths of the unitized formation.

## IV.   CONCLUSION

The assignment unambiguously conveyed all overriding royalty interests Cass owned in all depths of the lands within the surface boundary of the North Pembrook Unit. The trial court's grant of summary judgment for Pioneer, CrownQuest, and CrownRock and denial of summary judgment for Cass and Rock River is affirmed.

JEFF ALLEY, Chief Justice

October 18, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

8